# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** | ) ) ) | |
| PLAINTIFF, | ) ) | |
| V. | ) ) | No. 3:06-cv-11 |
| | ) | PHILLIPS |
| **CMC CONSTRUCTION COMPANY, INC., JERRY G. CROWE, and TARA ASHER,** | ) ) ) | |
| DEFENDANTS. | ) | |

## MEMORANDUM AND ORDER

The action before the Court involves a claim for recovery under various indemnity agreements executed by defendants. A defendant shareholder has counter-claimed alleging breach of fiduciary duty and breach of duty of good faith and fair dealing under the indemnity agreements. In response, the plaintiff has filed a motion for summary judgment [Doc. 14] pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendant has filed her answer in opposition, and the plaintiff has replied. For the reasons stated below, plaintiff's dispositive motion [Docs. 14] is **GRANTED, with exception** of plaintiff's motion to deny attorneys' fees.[1]

---

[1] The plaintiff has requested oral argument in its reply. However, the Court has reviewed the briefs and evidence submitted and does not feel that oral argument is necessary. Therefore, plaintiff's request for oral argument is denied.

1

**I.     Summary of the facts**

As the law requires, all disputed facts and inferences are resolved most favorably for the non-movant. The Court merely provides an abridged summary of facts for the purposes of this opinion.

Defendant Tara Asher ("Asher") and her ex-husband defendant Jerry Crowe ("Crowe") each owned one-half (½) of the stock in CMC Construction Company, Inc. ("CMC"). In 2001, CMC bid on new projects, which required the successful bidder to obtain performance bonds. Since CMC already had a relationship with plaintiff Hartford Fire Insurance Company ("Hartford"), CMC approached Hartford regarding performance bonds for 2001 projects. After CMC was awarded the Target project, Hartford issued a bond pursuant to the bid contract, and CMC paid Hartford the applicable fee. CMC then commenced work on the Target project.

Thereafter, in April of 2002, Asher, along with Crowe and CMC, signed an indemnity agreement, which was in addition to previously executed indemnity agreements (collectively referred to as "Indemnity Agreements").[2] Pursuant to the Indemnity Agreements, Asher agreed to indemnify Hartford and to hold Hartford harmless for any loss it may sustain or incur by reason of having executed surety bonds on CMC's behalf. More specifically, Article III of the Indemnity Agreements provides:

---

[2]Asher asserts that she was coerced into signing the 2002 indemnity agreement for fear that CMC's many projects would be jeopardized.

> [Asher] will indemnify and hold [Hartford] harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interests and attorney's fees, which [Hartford] incurs or sustains (1) because of having furnished any Bond or (2) because of the failure of [Asher] to discharge any obligations under this Agreement, or (3) in enforcing any of the provisions of this agreement.

Under the Indemnity Agreements, Asher and the other indemnitors conditionally assigned certain rights relating to CMC. Article VII of the Indemnity Agreements provides, in pertinent part, as follows:

> With respect to any Bond issued on behalf of an Indemnitor, all Indemnitors assign, transfer and convey to [Hartford];
>
> > A.  All rights of the Indemnitors in, arising from, or related to such Bonds or any bonded or unbonded contracts or any extensions, modifications, alterations or additions thereto;
> >
> > B.  All right, title and interest of the Indemnitors in and to (1) the work performed, (2) all supplies, tools, plant, machinery, equipment and materials on or near work sites or elsewhere, and (3) all materials purchased for or chargeable to the contract which may be in the process of manufacture, construction or transportation, or any storage anywhere.
>
> . . . .
>
> In the event these assignments become operative, [Asher] authorize[s] [Hartford], at its sole discretion and to the extent it deems appropriate, but without any obligation on its part:
>
> > (i)  To assert and pursue all of the assigned, transferred or conveyed rights, actions, causes of actions, claims and demands;
> >
> > (ii) To take possession of all or part of the work plus all associated supplies, tools, plant, machinery, equipment, materials, records, drawing and plans, and to arrange for the completion of such work, or to relet, or consent to the reletting or completion of the contract secured by any bond.

Additionally, pursuant to Article X , the Indemnity Agreements provides as follows:

> The Indemnitors expressly waive any notice of the following to which they may be entitled notwithstanding any defenses they otherwise may have been able to assert:
>
> (a)  The execution of any Bonds or the refusal to execute any Bonds;
>
> (b)  Defaults under contracts or any acts which might result either in claims, or in liabilities to the Surety under any Bonds;
>
> (c)  Any act, fact or information concerning or affecting the rights or liabilities of the Surety or any Indemnitor.

Further, the Indemnity Agreements expressly allow Hartford to settle or compromise any claims relating to a surety bond issued on CMC's behalf unless Asher and/or the other indemnitors posted sufficient collateral with Hartford. Article XIV of the Indemnity Agreements provides, in pertinent part, as follows:

> Any Indemnitor shall immediately notify [Hartford] in writing of any demand, notice, suit, action, or proceeding relating to any Bond. [Hartford] may adjust, settle or compromise any claim, demand, suit or judgment upon any Bonds. If requested by an Indemnitor, the Surety shall litigate such claim or demand or defend such suit, or appeal from such judgment, provided that the Indemnitor deposits with the Surety, at the time of such request, collateral satisfactory to [Hartford] to be used to pay any judgment rendered plus interest, costs, expenses and fees, including those of [Hartford].

The Indemnity Agreements also contained an attorney-in-fact provision. Article XII of the Indemnity Agreements provides:

> The Indemnitors irrevocably constitute, appoint and designate [Hartford] as their attorney-in-fact with the rights, but not the obligation, to exercise all rights of the Indemnitors assigned to [Hartford], and in the name of the Indemnitors, to execute and deliver any other assignments or documents deemed necessary by [Hartford] to effectuate and exercise the rights given

> it under this Agreement including, but not limited to, the right to endorse the name of any Indemnitor upon any securities, checks, drafts or evidences of debt. The Indemnitors hereby ratify and confirm all acts and actions taken by [Hartford] as such attorney-infact.

On or about June 2003, CMC filed suit for breach of contract against Knight/Jacobs Joint Venture ("Knight/Jacobs") in Anderson County Chancery Court and alleged damages in the amount of $1,867,596.37. The action was removed to the United States District Court for the Eastern District of Tennessee in July of 2003 and ultimately consolidated with other litigation under Docket Number 3:03-cv-454 ("CMC Litigation").

Since Knight/Jacobs had failed to pay CMC the debt owed, CMC was unable to make payroll and pay its subcontractors in August of 2003. In September of 2003, CMC voluntarily defaulted on its contract to perform work on the Joint Institute for Computational Sciences. The default resulted in Hartford assuming control of CMC and its various construction projects under bonds it had written.

The CMC Litigation was ultimately compromised and dismissed under Hartford's direction. Hartford then initiated this litigation against Asher, CMC, and Crowe to enforce Hartford's rights under the Indemnity Agreements executed by these parties. In its complaint, Hartford seeks indemnification for losses, costs, expenses, and attorneys' fees that Hartford has incurred, and continues to incur, by reason of having executed payment and performance bonds on behalf of Asher, Crowe, and CMC.

In response, Asher filed a counter-claim asserting that Hartford "settled CMC's lawsuit against Knight/Jacobs for far less than the value of the asserted claim of $1,867,596.37;" that Hartford "failed to pursue CMC's claim against Knight/Jacobs with rigor and due diligence;" and that "Hartford deliberately and willfully failed to keep [her] informed about the actions it was taking under its power of attorney on behalf of CMC on her behalf." Asher has specifically asserted two counts in her counter-claim: 1) breach of fiduciary duty and 2) breach of contract through breach of the duty of good faith and fair dealing.

Asher seeks the following damages from Hartford: 1) costs and attorney's fees incurred in defending the lawsuit brought by Hartford, and 2) diminishment of her one-half ownership interest in CMC, said one-half interest being worth approximately $2,000,000.00.

II.  **Law applicable to Rule 56 of the Federal Rules of Civil Procedure**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v.*

*Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 220 (6th Cir.1996).

**III.  Motion for summary judgment and applicable law**

The plaintiff asserts essentially fours arguments in its dispositive motion: (1) Asher, an individual, lacks standing to assert any claim related to the alleged diminishment of the stock value of CMC, a corporation; (2) Asher's claim based upon an alleged fiduciary duty fails as a matter of law because the underlying indemnity agreements did not create a fiduciary relationship between Hartford and Asher; (3) Hartford did not breach the implied covenant of good faith and fair dealing because the indemnity agreements expressly authorized Hartford's alleged acts and/or omissions; and (4) Asher is not entitled to recover attorneys' fees from Hartford as a matter of law.

The Sixth Circuit has previously grappled with similar situations to that which is

7

before the Court. In *Third National Bank in Nashville v. Celebrate Yourself Productions*, 807 S.W.2d 704 (6th Cir. 1990), a bank sued a corporation and its shareholders for default on a promissory note. In particular, the corporation executed a promissory note for the loan, and three shareholders signed personal contracts of guaranty on the note. *Id.* at 705. Unfortunately, the corporation was unable to pay the note when it matured, and the bank filed suit against the corporation and its shareholders. *Id.* Although undisputedly in default, the shareholders counter-claimed that the bank was liable for breaching the deposit contract, that is, for improperly allowing one of the shareholder to withdrawal money without requisite signatures. *Id.* at 705-06. The plaintiff filed dispositive motions, and ultimately the case was dismissed by the trial court with a damage award for the plaintiff. The defendant shareholders subsequently appealed. *Id.* at 706.

On appeal, the Sixth Circuit found:

> The counterclaim itself alleges a cause of action for injuries to the corporation, not the individual defendants. Claims such as this belong to the corporation and cannot be asserted by its stockholder and officers. *Commercial Credit Development Co. v. Scottish Inns, Inc.*, 69 F.R.D. 110 (E.D. Tenn. 1975). An action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation, the stockholder's rights being merely derivative and can be asserted only through the corporation. *Id.* at 117, *citing Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968).

*Id.* at 707-08.

Moreover, in *NBD Bank, N.A. v. J. Fulner, Jr.*, 109 F.3d 299 (6th Cir. 1997), three

individual shareholders, including an officer and a director, executed guaranties assuring payment of all present and future indebtedness of the corporation. *Id.* at 300. As in the instant case, the surety bank had taken control of the corporate activities, generally directing the financial affairs of the corporation. *Id.* After the bank filed suit against the corporate shareholders seeking payment on the notes, the defendant shareholders counter-claimed that 1) the bank owed the same fiduciary duty to the corporation and its shareholders as such directors and officers owe to the corporation, because the bank took control of the corporation by its acts; and 2) the bank had a duty to conduct itself fairly and deal with the defendants in good faith. *Id.* at 300-01. On dispositive motions, the district court dismissed the shareholders counter-claims in their entirety. *Id.* at 301. On appeal, the Sixth Circuit held in pertinent part as follows:

> [A]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542, 544 (6th Cir.1985). Insofar as the counterclaim seems to attempt to allege injury to defendants, it merely asserts loss to them as shareholders for diminution in value of their shares. A shareholder's rights are merely derivative unless he can show violation of a duty owed directly to him. Depreciation in value of shareholder's corporate stock is generally not the type of direct personal injury necessary to sustain a direct cause of action. *See Gaff v. F.D.I.C*, 814 F.2d 311 (6th Cir.1987). The district court properly granted summary judgment.

*Id.* at 301.

Turning now to the subject case before the Court, it is undisputed that Asher is claiming damages for "diminishment of her one-half ownership interest in CMC, said one-half interest being worth approximately $2,000,000.00," plus attorneys fees. The

9

Court finds that Asher's ownership interest is merely derivative and can only be asserted through CMC. In other words, Asher is seeking recovery for the diminishment of CMC's overall value, which belongs to the corporation. Asher cannot step into the corporation's "shoes" and litigate its claims. "A corporation and its stockholders are distinct legal entities even if all the stock in the corporation is owned by one stockholder. Even a stockholder who is the sole shareholder of a corporation may not bring a suit to right a wrong done to the corporation." *Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689 (Tenn. 1988).

While the Court is cognizant that stockholders may bring an action individually to recover for an injury done directly to them distinct from that incurred by the corporation arising out of a special duty owed to the shareholder by the wrongdoer, *see id.*, Asher has not alleged an injury done directly to her distinct and aside from the injuries sustained by CMC. Accordingly, Asher's claim for damages measured by the alleged diminishment in stock value of CMC fails as a matter of law.[3]

As to plaintiff's motion to bar Asher's claims for attorney's fees, at this point in the litigation, such a motion is premature.

---

[3] As the Court finds that Asher cannot litigate a claim that belongs to the corporation, the Court need not discuss Hartford's additional arguments pertaining to fiduciary duty and implied covenant of good faith and fair dealing.

## IV. Conclusion

For the reasons hereinabove set forth, plaintiff's motion for summary judgment [Doc. 14] is hereby **GRANTED, with the exception** of plaintiff's motion to deny attorneys' fees, which is deemed premature, and therefore **DENIED with leave to re-file** after determination of claims on the merits. Parties shall proceed to trial with regard to the remaining claims.

**IT IS SO ORDERED.**

                              **ENTER:**

                              s/Thomas W. Phillips
                              UNITED STATES DISTRICT JUDGE